# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WILLIE J. RIDEOUT, JR.,
        Plaintiff,

vs.

SHELBY TOWNSHIP, SHELBY
TOWNSHIP POLICE DEPARTMENT,
CHIEF OF POLICE ROBERT SHELIDE,
POLICE OFFICERS: JOSEPH WOJCIK,
MARK BENEDETTINI, TERRANCE
HOGAN, KEVIN BAILEY, ERMIR VILA,
JUSTIN GOEBEL, ROBERT HEISLER; and
other Assisting Police Officers, John Does, to
be determined,
        Defendants.

Case No. 4:22-cv-11597-MFL-DRG
Hon. Hon. F. Kay Behm
Mag. Judge David R. Grand

_____/

ELDER BRINKMAN LAW
By: AZZAM ELDER (P53661)
Attorneys for Plaintiff
1360 Porter St., Suite 250
Dearborn, MI 48124
(313) 879-0355
800-MyLawFirm
aelder@elderbrinkmanlaw.com

KORKIS LAW FIRM, PLLC
By: NINA KORKIS TAWEEL (P63031)
Co-Counsel for Plaintiff
1360 Porter St., Suite 200
Dearborn, MI 48124
313-581-5800
nina@korkislaw.com

KIRK, HUTH, LANGE & BADALAMENTI, PLC
By: ROBERT S. HUTH, JR. (P42531)
    RAECHEL M. BADALAMENTI (P64361)
    ELIZABETH P. ROBERTS (P76017)
Attorneys for Defendants Shelby Twp, Shelby
Twp PD, Chief of Police R. Shelide, Sgt,
J.Wojcik, Sgt. M. Benedettini, Det./Lt. T. Hogan,
Sgt. K. Bailey, Det. E. Vila, Ofc. J. Goebel and
Det./Sgt. R. Heisler
19500 Hall Road, Suite 100
Clinton Township, MI 48038
(586) 412-4900
rhuth@KirkHuthLaw.com
rbadalamenti@KirkHuthLaw.com

# PLAINTIFF WILLIE J. RIDEOUT JR.'S BRIEF IN SUPPORT OF
# RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ……………..……..…………………………iii

CONTROLLING AUTHORITY ……………..…..…….…………….....iv

STATEMENTS OF ISSUES PRESENTED …………..……...…………..v

INDEX OF EXHIBITS …………….……..………….….……………...vii

INTRODUCTION ……………..……..………………………….......1

COUNTER-STATEMENT OF MATERIAL FACTS ……………………....2

STANDARD OF REVIEW…………..……..………………………….7

LEGAL ARGUMENT ……………..……..………………………..8

      **A. M***ONELL* **LIABILITY AGAINST SHELBY TOWNSHIP CAN BE BASED UPON DEFENDANT SHELIDE'S USE OF HIS OFFICE TO EFFECT AN UNCONSTITUTIONAL ARREST AGAINST MR. RIDEOUT TO DETER HIM FROM EXERCISING HIS FIRST AMENDMENT RIGHTS TO PROTEST AGAINST SHELIDE'S REINSTATEMENT AS CHIEF OF THE POLICE DEPARTMENT.**

      **B. THE PREDICATE ALLEGATIONS OF FACT AND EXHIBITS IN THE SECOND AMENDED COMPLAINT, AND THE REASONABLE INFERENCES TO BE DRAWN FROM THEM, PRESENT VIABLY STATED CAUSES OF ACTION UNDER APPLICABLE SUBSTANTIVE AND PROCEDURAL LAW.**

CONCLUSION ……………….………….……………………..…………….…..22

# INDEX OF AUTHORITIES

## CASES

*Bell Atlantic Corp v. Twombly,* 550 U.S. 540 (2007)……………………………….3,7

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)……………………………….8

*Futernick v. Sumpter Tp.,* 78 F.3d 1051 (6th Cir. 1996)…...…………………….8

*Gillespie v. City of Battle Creek*, 100 F.Supp.3d 623 (2015)………...…………...10

*Heusser v. Hale*, 777 F.Supp.2d 366, 375 (D. Conn. 2011)…………………...15

*Mezibov v. Allen,* 411 F.3d 712(2005)……………………………………………15

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)……………………………8

*Petipren v. Jaskowski*, 494 Mich. 190 (2013)…………………………………...8

*Wood v. Eubanks*, 25 F.4th 414 (6th Cir. 2022)…………………………………...17

## MICHIGAN STATE STATUTES

MCL 691.1407(5) ………………………………………………………………...8

## FEDERAL RULES OF CIVIL PROCEDURE

FRCP 9(b) ……………………………………………………………………….5

FRCP 12(b)(6) …………………………………………………………………7

## CONTROLLING AUTHORITY

*Bell Atlantic Corp v. Twombly,* 550 U.S. 540 (2007) ………………...………..3,7

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988) …………………………….8

*Futernick v. Sumpter Tp.,* 78 F.3d 1051 (6th Cir. 1996) …...……………...……8

*Gillespie v. City of Battle Creek,* 100 F.Supp.3d 623 (2015) ………………..…...10

*Heusser v. Hale,* 777 F.Supp.2d 366, 375 (D. Conn. 2011) ……....…………...15

*Mezibov v. Allen,* 411 F.3d 712 (2005) ..……………………….………………..15

*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) ………...……..……………8

*Petipren v. Jaskowski,* 494 Mich. 190 (2013) ….……………...………………...8

*Wood v. Eubanks,* 25 F.4th 414 (6th Cir. 2022) .………...………………………....17

## STATEMENT OF ISSUES PRESENTED

1) Do Plaintiff's allegations of fact, pleaded exhibits, and reasonable inferences from them under applicable law support Plaintiff's *Monell* cause of action against SHELBY TOWNSHIP based upon Defendant Chief of Police SHELIDE's status as the highest appointed executive police department official and final policymaker of police operations?

   Plaintiff answers:            YES
   Defendants answer:            NO
   The Court should answer:      YES


2) Do Plaintiff's allegations of fact, pleaded exhibits, and reasonable inferences from them under applicable law support Plaintiff's *Monell* cause of action against SHELBY TOWNSHIP based upon ratification of the named Defendants' conduct?

   Plaintiff answers:            YES
   Defendants answer:            NO
   The Court should answer:      YES

3) Do Plaintiff's allegations of fact, pleaded exhibits, and reasonable inferences from them, under applicable law, support conspiracy and/or concerted action causes of action against the named individual defendants for retaliation, and SHELBY TOWNSHIP, for the unlawful deprivation of Plaintiff's constitutional rights under the First, Fourth and/or Fourteenth Amendments?

   Plaintiff answers:            YES
   Defendants answer:            NO
   The Court should answer:      YES

4) Do Plaintiff's allegations of fact, pleaded exhibits, and reasonable inferences from them under applicable law support Plaintiff's causes of action against the individually named defendants under §§1983 and/or 1985?

| | |
|---|---|
| Plaintiff answers: | YES |
| Defendants answer: | NO |
| The Court should answer: | YES |

5) Do Plaintiff's allegations of fact, pleaded exhibits, and reasonable inferences from them under applicable law support Plaintiff's state law causes of action against Defendant SHELBY TOWNSHIP and/or the individually named defendants, except Defendant SHELIDE?

| | |
|---|---|
| Plaintiff answers: | YES |
| Defendants answer: | NO |
| The Court should answer: | YES |

## INDEX OF EXHIBITS

1. Shelby Township Minutes of Special Meeting – June 4, 2020 and June 16, 2020

Plaintiff, Willie J. Rideout, Jr., by and through his attorneys, Azzam Elder, opposes Defendants' Motion for Partial Dismissal and states as follows:

## **INTRODUCTION**

In this 42 USC §1983 action, WILLIE J. RIDEOUT, JR. seeks to hold Defendant ROBERT SHELIDE, individually and as the Chief of Police ("COP") of Shelby Township, Defendant SHELBY TOWNSHIP, and other individually named Defendant SHELBY police officers liable for breaching his constitutional rights under the First and Fourteenth Amendments; other state law claims are alleged against named SHELBY police officers. As a review of the Second Amended Complaint details, the §1983 claim against SHELBY TOWNSHIP is predicated upon SHELIDE's *retaliatory "personal and professional vendetta"* against MR. RIDEOUT to prevent him from publicly exercising his First Amendment right to petition the TOWNSHIP not to reinstate SHELIDE after the latter served a thirty (30) day suspension, without pay, for racist "twitter" comments in support of police abuse against Black Lives Matter protesters. To do so, it is alleged that the named Defendant officers, and "Doe" officer(s), participated in concerted action (a conspiracy) under the direction and authority of Defendant SHELIDE to help him pursue his retaliatory "personal and professional vendetta" against MR. RIDEOUT.

That the primary predicate for the §1983 claims against SHELBY
TOWNSHIP is somewhat uncommon, however, does not make it any less
compelling under applicable law, <u>which defense counsel does not cite</u>. *Pembaur v.*
*City of Cincinnati*, 475 U.S. 469, 478 & n.6 (1986) [A municipality may be liable
for the acts of a final policymaker if these acts caused a constitutional violation, even
if the constitutional violation occurs only once].

The assertions in Defendants' motion to dismiss are dependent upon fact
discovery and, ultimately, fact finding by the jury. Therefore, their arguments are
not really for a motion to dismiss, but, rather, for summary judgment. Fittingly, most
of the cases cited by Defendants were each decided on summary judgment, not
motions to dismiss. It is clear that Defendants' motion is premature and that fact
discovery is necessary for Plaintiff to prosecute his claims. Therefore, Defendants'
motion should be denied.

## COUNTER-STATEMENT OF MATERIAL FACTS

In accord with FRCP 12(a)(6), the following timeline and allegations of fact
in the Second Amended Complaint [ECF No. 30] are to be accepted as true for
purposes of the Defendants' motion to dismiss:

- <u>May 25, 2020</u>

    [¶2] Memorial Day - Death of George Floyd

- <u>June 17, 2020</u>

[¶¶15 – 30] Defendant SHELIDE suspended thirty (30) days for racist twitter statements urging police brutality, which he did under a pseudonym.

[The vote of the township's trustees approving the suspension can be viewed on the township's public website and is quoted in full, *infra*].

- July 1, 2020

[¶¶22, 31] MR. RIDEOUT publicly protests against SHELIDE being reinstated as Chief of Police on July 18, 2020.

- July 15, 2020 [three (3) days before SHELIDE's reinstatement]

[¶31] MR. RIDEOUT publicly protests against SHELIDE's forthcoming reinstatement.

- July 20, 2020 [two (2) days after SHELIDE's reinstatement]

[¶¶32-33] MR. RIDEOUT publicly protests against SHELIDE's reinstatement and is interviewed by local TV news.

- July 20 – 22, 2020

[¶¶34-108] Under his final authority as Chief of Police, SHELIDE retaliates against MR. RIDEOUT as part of a "personal and professional vendetta" against him by unconstitutionally arranging for MR. RIDEOUT's arrest on July 22, 2020, based upon a pre-textually created accusatory Information, which is subsequently dismissed with the granting of MR. RIDEOUT's motion to dismiss.

Absent from Defense counsel's discussion of *Bell Atlantic Corp v. Twombly,* 550 U.S. 540 (2007) is that in deciding an FRCP 12(b)(6) motion, the court is required to test the legal sufficiency of the complaint liberally by assuming the facts pleaded as true and drawing reasonable inferences from them:

> *Factual allegations must be enough to raise a right to relief above the speculative level,* see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004) (hereinafter Wright & Miller) *("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"),3 on the assumption that all the allegations in the complaint are true (even if doubtful in fact),* see, e.g., Swierkiewicz v. [550 U.S. 556] Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S. Ct. 992; Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, **("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations");** Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, (**a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").**
> (*Id.* at 555)(Emphasis added)

Here, the Second Amended Complaint [ECF No. 30] not only contains factual allegations supporting §1983 and §1985 liability against both Defendant SHELIDE and Defendant SHELBY Township, but is also based upon, among other things, photographs, videos, tweets, and the dismissal of the criminal Information against MR. RIDEOUT. To argue, as defense counsel does, that *Twombly, supra,* requires

more is disingenuous. Are we to understand, for example, that defense counsel contends that the specific pleading requirements of FRCP(9)(b)[1] for fraud or mistake should now apply in pleading the case at bar? To the contrary, even under FRCP(9)(b), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The pleading and such reasonable inferences that may be drawn from them, *before discovery,* not to mention at trial, supports the claim that Chief of Police SHELIDE intentionally retaliated against Mr. RIDEOUT by using his power in furtherance of a "personal and professional vendetta" against MR. RIDEOUT to deprive and intimidate him from exercising his First Amendment rights to have Defendant SHELIDE permanently lose his position and income as Chief of the Police Department. Further, the pleading alleges that the means chosen to do so subjected MR. RIDEOUT to an unlawful arrest and an unconstitutional criminal prosecution.

Indeed, the timing of MR. RIDEOUT's arrest by Information on July 22, 2020, only four (4) days after Defendant SHELIDE's reinstatement and (2) days after MR. RIDEOUT's last protest and a TV interview — rather than by one or more

---

[1] FRCP 9(b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

of the officers who spoke with MR. RIDEOUT at the scene on July 20, 2020 —

belies probable cause and the justification for the Information, which was dismissed.

Plaintiff's Second Amended Complaint contains specific factual allegations

of selective prosecution, which are supported by undisputed exhibits that are made

part of the pleading:

> (¶239) Plaintiff was intentionally treated different (*sic*)
> and discriminated against from other (*sic*) similarly
> situated, including other protestors who are *not* black, who
> did not go on media seeking the Chief's resignation, and
> other citizens who participated in road rallies/protests in
> support of President Trump or Police in general, including
> support for Defendant Shelide.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 570). Per *Ashcroft*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

<u>**LEGAL ARGUMENT**</u>

**I.  *MONELL* LIABILITY AGAINST SHELBY TOWNSHIP CAN BE BASED UPON DEFENDANT SHELIDE'S USE OF HIS OFFICE TO EFFECT AN UNCONSTITUTIONAL ARREST AGAINST MR. RIDEOUT TO DETER HIM FROM EXERCISING HIS FIRST AMENDMENT RIGHTS TO PROTEST AGAINST SHELIDE'S REINSTATEMENT AS CHIEF OF THE POLICE DEPARTMENT.**

<u>*Monell* **liability – one act by final policymaker**</u>

Of initial import is that §1983 actions are not subject to the immunity provisions of certain governmental officials under Michigan law. *See generally Futernick v. Sumpter Tp.,* 78 F.3d 1051 (6th Cir. 1996). Additionally, and controlling here, is that a *Monell* claim does not require evidence of an entrenched custom or practice where it is based upon the act of a "final policymaker" if the act caused a constitutional violation, <u>**even if the constitutional violation occurs only once**</u>. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 & n.6 (1986). Further, whether an official is a "policymaker" for *Monell* purposes is a question of state law for the court, rather than a jury. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

<u>**Michigan State Law and "Final Policymaker"**</u>

Of significance on this issue is *Petipren v. Jaskowski*, 494 Mich. 190 (2013), where Michigan's Supreme Court interpreted the application of MCL 691.1407(5), the state's absolute tort immunity statute for certain select high government officials,

in a case where a village's Chief of Police was sued in the context of performing the

ordinary duties of a police officer:

> ...we turn to the language of MCL 691.1407(5), which
> provides certain high-ranking officials with absolute
> immunity from tort liability, to determine whether
> Jaskowski is entitled to absolute immunity. It states:
>
> A judge, a legislator, and ***the*** elective or ***highest
> appointive executive official of all levels of government***
> are immune from tort liability for injuries to persons or
> damages to property if he or she is acting within the scope
> of his or her judicial, legislative, ***or executive authority.***
>
> Nowhere does the statute contain any indication that the
> "executive authority" exercised must be exclusive to the
> elective or highest appointive official in order for that
> official to claim absolute immunity.
>
> ***We therefore hold that "executive authority" as used in
> MCL 691.1407(5) means all authority vested in the
> highest executive official by virtue of his or her position
> in the executive branch.*** In so concluding, we reject other
> possible interpretations of the term "executive," including
> the notion proposed by the Court of Appeals, Petipren, and
> the dissent that it should be read as referring to high-level
> administrative or supervisory functions particular to an
> executive's office. That interpretation ignores the context
> in which the term "executive" is used. ***In context, the term
> "executive authority"does not contemplate whether the
> highest appointive executive official performed high-
> level duties exclusive to his or her position, but simply
> whether the official exercised authority vested in the***

> *official by virtue of his or her role in the executive*
> *branch*.
> (*Id.* at 207-09)(Emphasis added)

A fairly recent example of how this principle of law has been applied in relation to a motion to dismiss on the face of the pleadings is *Gillespie v. City of Battle Creek*, 100 F.Supp.3d 623 (2015). There, the plaintiffs, all of whom were female police officers in the defendant city's police department, discovered that they were being surreptitiously videotaped in a locker room that was set aside exclusively for their use in their precinct; the surveillance was ordered because of reported property thefts from what was set up as a secure locker room.

In two counts of a multi-count complaint, plaintiffs sought to hold the City liable pursuant to 42 USC §1983 for the unconstitutional deprivation of their rights to privacy under the Fourth Amendment. In determining the viability of the invasion of privacy counts, the federal District Court for the Western District of Michigan referenced the plaintiffs' pleading in footnote 4, to wit:

> With respect to their claim of **municipal liability**, Plaintiffs
> have alleged:
>
> Chief Jackie Hampton (HAMPTON) is or was the chief
> law enforcement officer of BATTLE CREEK, the highest
> ranking law enforcement officer for the City of Battle
> Creek and the decision maker with regard to the operation
> of the Department. HAMPTON'S knowledge and
> approval of the actions of the other Defendants herein is
> binding upon Battle Creek and creates municipal liability.

(Am. Compl. ¶ 9.)

> The actions of Defendant HAMPTON, the chief law
> enforcement officer and the decision maker for Defendant
> BATTLE CREEK in the operation of the Battle Creek
> Police Department establishes and constitutes policies,
> customs and practices of BATTLE CREEK, creating
> municipal liability.
> (Am. Compl. ¶ 59.) (Emphasis added.)

In denying the city's motion to dismiss these particular counts, Federal

District Court Judge Bell emphasized the following:

> The Court is satisfied that Plaintiffs' claim of municipal
> liability is based upon more than "a legal conclusion
> couched as a factual allegation." *See Twombly,* 550 U.S.
> at 555, 127 S.Ct. 1955. *Plaintiffs' complaint contains
> sufficient factual matter, accepted as true, to state a claim
> of municipal liability that is plausible on its face. Whether
> the chief of police did in fact have final authority with
> respect to the manner in which the investigation was
> conducted involves factual issues that are not before this
> Court at this time.* Accordingly, the City's motion to
> dismiss the § 1983 claims asserted against it in Counts I
> and II will be denied.
> (Emphasis added.)

Here, as in *Gillespie, supra*, the Second Amended Complaint's factual

allegations, the exhibits contained in the pleading, and the reasonable inferences to

be drawn from them state a a viable §1983 claim against Defendant SHELIDE and

SHELBY TOWNSHIP pursuant to *Twombly's* requirements, *supra*, because it is alleged that:

> (1) Defendant SHELIDE "held the highest position in Shelby Township law enforcement" (¶21);

> (2) "Chief of Police" (¶117); and

> (3) "by virtue of his position, is responsible for the policy and practices which violate First Amendment rights … ((¶96).

As pleaded, Defendant SHELIDE was and remains the highest "appointed executive official" of Defendant SHELBY TOWNSHIP's Police Department. That questions of fact remain to be decided are, of course, not grounds for dismissal at this stage. However, in trying to obtain publicly available information from SHELBY TOWNSHIP itself, Plaintiff's counsel came across entries of the Township Trustees Board Meetings, as follows:

> CHARTER TOWNSHIP OF SHELBY **June 4, 2020** Page 2 2. **Paid Administrative Leave for Police Chief (Requested by Township Attorney) Mr. Huth said the Township has been made aware of social media posts that were allegedly linked to Chief Shelide. Both he and the Board view this as a matter to be investigated.** While the matter is being investigated and the facts are being looked in to he recommended the Board put the Chief on paid administrative leave. It is not an easy recommendation as the department has been run in an A+ manor with Chief Shelide. Good reports have been received from residents and those who work with him. Mr.

Huth has spoken with Chief Shelide and he is aware of the recommendation to the Board. Mr. Huth responded to questions received from the public. MOTION by Viviano, second by Wilhelm, to put Police Chief Robert Shelide on paid administrative leave while investigation is underway regarding alleged comments on social media. Mr. Vermeulen commented on the item. Roll Call: Ayes – Viviano, Wilhelm, Casali, Flynn, Grot, Stathakis, Vermeulen Nays – none Motion carried

(Emphasis added)

**June 16, 2020**
**5. Discussion Regarding Police Chief Shelide (Requested by Board of Trustees)**
Discussion occurred between Board members and Mr. Huth regarding the format to allow Police Chief Robert Shelide to speak first before any motion is made. It was agreed to allow him to speak first. Police Chief Robert Shelide spoke on his own behalf. MOTION by Wilhelm, second by Casali, to suspend Police Chief Shelide for 30 days without pay effective June 17 through July 17 and as a condition of continued employment require him to satisfactorily complete the Cultural Awareness and Law Enforcement training program conducted by James A. Friedman Training and Consulting, LLC and O.S.S. De-escalation Program within 60 days. Mr. Flynn commented on the item. Mr. Huth asked the motion maker and supporter if they would consider an amendment to the motion. He heard later in the day from O.S.S. and they suggested that the Law Enforcement Counseling and Training would be the best program instead of the one suggested by the motion. This information was sent to the Board of Trustees later in the day for consideration. Mr. Huth also said a speaker was missed earlier in the meeting and he would like the moderator to allow that person to

speak ahead of the vote on this matter. Mr. Stathakis asked Ms. Wilhelm and Ms. Casali if they would amend their previous motion with the training program Mr. Huth recommended and they both agreed. The moderator said he could not find the caller on the Zoom meeting. Discussion followed between the Board of Trustees. The caller previously discussed was allowed to speak. Per Mr. Stathakis request, Mr. Huth read the motion to be voted on as follows: **Move to suspend Police Chief Shelide for 30 days without pay effective June 17 through July 17 and as a condition of continued employment require him to satisfactorily complete the Cultural Awareness and Law Enforcement training conducted program by James A. Friedman Training and Consulting, LLC and O.S.S. Law Enforcement Counseling and Training within 60 days.** Roll Call: Ayes – Wilhelm, Casali, Flynn, Grot, Vermeulen Nays – Stathakis, Viviano Motion carried.
(Emphasis added)

Exhibit A – Shelby Township Trustees Board Meetings Minutes.

Whether Defendant SHELIDE successfully completed his mandated training before or after his reinstatement; *i.e.*, within the sixty (60) days between June 17, 2020, and August 16, 2020, is not yet known, but will be a subject for pre-trial discovery, which will include the who, what, when, where, why, and how of:

(1) the investigation and its findings;

(2) the reason why the Board of Trustees suspended Defendant SHELIDE from June 17, 2020, to July 17, 2020, without pay, conditioned upon

his completion of the retraining course within sixty (60) days of his

suspension;

(3) the retraining course, and whether Defendant SHELIDE completed it

satisfactorily before he was reinstated at the end of the day on July 17,

2020, given that its completion *before* his was reinstatement was not a

condition precedent; and

(4) Defendant SHELIDE's participation in ordering, seeking and/or

obtaining the arrest warrant.

## Retaliation, §1983, Matter of Public Concern

In *Heusser v. Hale*, 777 F.Supp.2d 366, 375 (D. Conn. 2011), the Federal

District Court for Connecticut emphasized the significance of one's First

Amendment rights in a §1983 case, as follows:

> Generally, to prevail on a First Amendment retaliation
> claim under Section 1983, the plaintiff must make a prima
> facie showing of "retaliation." Specifically, the plaintiff
> must establish that the adverse state action was, in fact,
> "made in retaliation for his exercise of the constitutional
> right of free speech." *Greenwich Citizens Committee, Inc.*
> *v. Counties of Warren and Washington Industrial*
> *Development Agency*, 77 F.3d 26, 32 (2d Cir.1996) (citing
> *Perry v. Sindermann* 408 U.S. 593, 598 (1972).

Further, in *Mezibov v. Allen,* 411 F.3d 712 (2005), the Sixth Circuit Court of

Appeals stated somewhat more specifically the elements of a First Amendment

§1983 retaliation claim, to *wit*:

> With regard to the second element of a §1983 claim, when the alleged violation of federal law is that a government official retaliated against a plaintiff for exercising his constitutional rights, as in this case, the plaintiff must ultimately prove three sub-elements: **(1)** the plaintiff engaged in constitutionally protected conduct; **(2)** an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and **(3)** the adverse action was motivated ***at least in part by the plaintiff's protected conduct***. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (*en banc*).

> (*Id.* at 717) (Emphasis added.)

A review of the timeline, *supra*, and the allegations and direct and circumstantial evidence in the Second Amended Complaint, support a finding by this court that, as pleaded, the retaliatory §1983 claim states that MR. RIDEOUT's arrest was motivated by more than the minimal "***at least in part by the plaintiff's protected conduct***" standard. How else is it to be explained that MR. RIDEOUT was arrested pursuant to an Information that was obtained on July 22, 2020, which was two days *after* the July 20, 2020 protest, which itself was two days *after* Defendant SHELIDE's reinstatement as the Chief of Police, *which was the substance of MR. RIDEOUT's protest.*

## Lack of probable cause for arrest

The Defendants contend that a *facially* valid Information are outcome determinative in deciding whether federal §1983 and state law claims for false arrest

can be maintained, and cites *Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir. 2022) as controlling. To the contrary, if this were so, no one would be able to challenge the substance of an Information and Warrant.

In *Wood, supra*, the plaintiff was arrested for disorderly conduct under Ohio law. There, the defendants' motion for summary judgment dismissing Wood's §1983 causes of action for false arrest and retaliation were denied, as follows:

> Michael Wood wore a shirt bearing the words "Fuck the Police" to the county fair. According to Wood, the defendant police officers ordered him to leave and escorted him from the fairgrounds because of his shirt. While leaving, Wood made his displeasure known through numerous coarse insults levied at the police and the fairground's administrator. The defendants then arrested Wood for disorderly conduct. ***After the charges were dismissed*, *Wood filed this §1983 action against the officers, alleging false arrest and retaliation.*** The district court granted summary judgment to the defendants. ***We reverse because Wood's speech was protected by the First Amendment.***
> (*Id*. at 414) (Emphasis added)

A comparison with *Wood* is useful:

(1) Plaintiff *Wood was arrested at the scene* by officers who observed his conduct —

MR. RIDEOUT was *not arrested at the scene* by the officers who observed his conduct, which even District Court Judge DOUGLAS P. SHEPERD commented

upon in his decision granting MR. RIDEOUT's pre-trial motion to dismiss the Information:

> I -- I would note just as an aside, that I thought it was somewhat unusual -- somewhat unusual for the Defendant to be charged after the fact and arrested several days later rather than the date of the alleged incident, which typically would be the case and was the case on some of these other matters. (ECF No. 30, ¶82).

(2)  The statement on Wood's shirt and what he said to the officers reflected his feelings *about police in general* —

In contrast, the Second Amended Complaint alleges that Defendant Chief of Police SHELIDE unconstitutionally used his regained executive powers to satisfy a personal and professional vendetta against MR. RIDEOUT based upon the *latter's protests at the protest and what he said during his TV interview about Defendant SHELIDE, personally and professionally*, which was two (2) days after SHELIDE was reinstated.

(3)  The defendants in *Wood* asserted "qualified immunity" —

Here, as pleaded, the doctrine has no application with respect to the arrest of MR. RIDEOUT as the Second Amended Complaint alleges that the Information was unconstitutionally obtained as part of Defendant SHELIDE's personal and professional vendetta against MR. RIDEOUT arising out of the latter's

constitutionally protected speech at the protests and during his TV interview, in opposing Defendant SHELIDE's reinstatement.

## II. THE PREDICATE ALLEGATIONS OF FACT AND EXHIBITS IN THE SECOND AMENDED COMPLAINT, AND THE REASONABLE INFERENCES TO BE DRAWN FROM THEM, PRESENT VIABLY STATED CAUSES OF ACTION UNDER APPLICABLE SUBSTANTIVE AND PROCEDURAL LAW.

As to Counts I, IV, V and VI, ratification is established by operation of law through Defendant SHELIDE's conduct as the highest-ranking final policymaking authority for the SHELBY TOWNSHIP Police Department. *See* Section I, *supra*. As to Count V, *Monell* liability is established by operation of law through Defendant SHELIDE's conduct as the highest-ranking final policymaking authority for the SHELBY TOWNSHIP under which supervisory and regular line police officers knowingly participated in the unconstitutional violation of MR. RIDEOUT. *See* Section I, *supra*.   As to Count XIII, *Monell* liability is established by operation of law through Defendant SHELIDE's conduct as the highest-ranking final policymaking authority for SHELBY TOWNSHIP under which supervisory and regular line police officers participated in the unconstitutional violation of MR. RIDEOUT. *See* Section I, *supra.*

Defendant Shelide is already excluded from Counts 3 (false arrest), 7 (battery), 8 (gross negligence), 9 (intentional infliction of emotional distress), 10 (defamation) and 11 (malicious prosecution). *See* ECF No. 30. As to the remaining

Defendants, all such counts are valid at this time as no discovery has been conducted. At this early stage of the proceedings, dismissal is not supported because the allegations of the Second Amended Complaint are still presumed to be true, which means, for the purpose of a motion to dismiss, that these Defendants did participate as alleged.

As to Count VII, Defendants contend that the physical arrest of MR. RIDEOUT cannot be imputed to any non-party police officers. However, Plaintiff asserts that Defendants committed a battery by through the physical, unlawful arrest of MR. RIDEOUT. As no discovery has been conducted and Plaintiff named "John Does" in his complaint because all of that information is not necessarily known to Plaintiff at the time of the filing of his complaint, if it is true that Plaintiff has not correctly identified all of the officers who physically placed him under arrest, then Plaintiff should be allowed to amend his complaint upon discovery of that information. This is clearly fact-dependent and not suitable for a motion to dismiss.

As to Count VIII, under Michigan law, gross negligence is defined as "conduct or a failure to act that is so reckless that it demonstrates a substantial lack of concern for whether an injury will result". *See* M Civ JI 14.10. In *Bletz v Gribble*, 641 F.3d 743 (6th Cir. 2011), the court held that a claim for gross negligence cannot be fully premised on a claim for excessive force, or other intentional torts, such as battery. However, in this case, Plaintiff asserts that this claim against Defendants is

an alternative theory of liability based on Defendants' violation of his First Amendment rights as stated in Section 1, *supra*.

As to Count X, Defendants cite *Brothers v. Cnty. of Summit*, No. 5:03CV1002, 2007 WL 1567662 (N.D. Ohio May 25, 2007), aff'd, 271 F. App'x 518 (6th Cir. 2008), which is yet another case decided on summary judgment after the close of full and adequate discovery. Moreover, *Brothers* did not involve a claim for defamation as is the case here, but, rather, involved what the court deemed an improper Fourth Amendment claim that was couched in the language of defamation. Specifically, with regard to such claims, the Court ruled:

> Plaintiffs next focus on Captain Momchilov's statements or approval of statements made in the May 29, 2004 press release about Mr. Corsi and Ms. Brothers and statements to "random callers" made to the Sheriff's Department. In the complaint plaintiffs' claim the defendants knowingly and voluntarily continued to report falsehoods to the media and others regarding Mr. Corsi and his business and that these defamatory and slanderous statements resulted in exploitation of plaintiffs' personality causing outrage, mental suffering, shame and humiliation to plaintiffs. (Complaint ¶¶ 32–33). From a Constitutional standpoint, there is no basis for asserting a claim of defamation or humiliation as a claim for constitutional violation under the Fourth Amendment.

*Id.* at *13. It is clear that this is not the same allegation made by Plaintiff here, nor is it the same basis for dismissal of a standard defamation claim. Ultimately, contrary to the defense assertions, *Brothers* said nothing of "public officials are permitted to discuss matters of public concern, including ongoing criminal investigations and arrests, without risk of liability on defamation theories." Moreover, Defendants'

argument that the statements were, in fact, true is another fact-based argument that is not proper for a motion to dismiss.

As to Count XI, Defendants cite *Belt v. Ritter*, 18 Mich App 495 (1969), decision aff'd 385 Mich. 402 (1971), which involves police officers who were advised that they had probable cause by prosecuting attorneys after telling the facts *fairly and freely* to the prosecutor. Thus, if the allegations here were that the police did not commit any misconduct in presenting evidence to the prosecutor and to the magistrate for the warrant, then *Belt* may support dismissal of this count. However, here, Plaintiff asserts that Defendants created pretextual grounds for an arrest, manipulated the system through not disclosing the pretextual nature of the planned arrest (i.e., their improper motivations), thus improperly receiving confirmation that there was probable cause from APA Cataldo and from the issuance of the warrant.

## CONCLUSION

The predicate allegations of fact and pleaded exhibits in Plaintiff's Second Amended Complaint, and the reasonable inferences to be drawn from them, state viable causes of action under applicable substantive and procedural law.

It is, therefore, respectfully requested that this Court deny the Defendants' motion to dismiss and order further relief as this Court may seem just and proper. If the Court is inclined to grant Defendants' motion, Plaintiff requests that the Court permit Plaintiff to file his Third Amended Complaint within seven (7) days.

Dated: May 11, 2023

Respectfully Submitted,
/s/ Azzam Elder
Azzam Elder (P53661)
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2023, I caused to be electronically filed the foregoing document with the U.S. District Court's Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record.

/s/ Scott Dayne
Scott Dayne, paralegal